KOREY D. RASMUSSEN (6129)
SNOW CHRISTENSEN & MARTINEAU
10 Exchange Place, Eleventh Floor
Post Office Box 45000
Salt Lake City, Utah  84145-5000
Email:       kdr@scmlaw.com
Telephone: (801) 521-9000
Facsimile:  (801) 363-0400
*Attorneys for Plaintiff*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF UTAH

| | |
|---|---|
| SCOTTSDALE INDEMNITY COMPANY,<br><br>            Plaintiff,<br><br>    v.<br><br>DIVERSIFIED MAINTENANCE SYSTEMS, INC., DIVERSIFIED STRIPING SYSTEMS, INC., KMB EQUIPMENT, LLC, KEVIN BECK, PAMELA K. BECK, and UNIVERSAL BUSINESS INSURANCE,<br><br>            Defendants. | **COMPLAINT AND JURY DEMAND**<br><br>Case No. 2:23-cv-00109-RJS<br><br>Judge Robert J. Shelby |

### COMPLAINT FOR DECLARATORY JUDGMENT

Pursuant to Rule 57, Federal Rules of Civil Procedure, Plaintiff Scottsdale Indemnity Company ("Scottsdale") complains against Defendants Diversified Maintenance Systems, Inc. ("DMS"), Diversified Striping Systems, Inc. ("DSS"), KMB Equipment, LLC ("KMB"), Kevin Beck ("K. Beck"), Pamela K. Beck ("P. Beck" or, together with K. Beck, the "Becks"), and Universal Business Insurance ("UBI"), and states as follows:

1. This is an insurance coverage action seeking declaratory relief pursuant to 28 U.S.C. §§ 2201, 2202, and 1332.

## PARTIES

2. Scottsdale is an insurance company organized and existing under the laws of the State of Ohio with its principal office located in Scottsdale, Arizona.

3. Upon information and belief, DMS is a Utah corporation with its principal place of business in Utah.

4. Upon information and belief, DSS is a Nevada corporation with its principal place of business in Utah.

5. Upon information and belief, KMB is a Utah limited liability company whose members are citizens of the State of Utah.

6. Upon information and belief, K. Beck is a citizen of the State of Utah and is an owner of DMS, DSS, and/or KMB.

7. Upon information and belief, P. Beck is a citizen of the State of Utah and is an owner of DMS, DSS, and/or KMB.

8. Upon information and belief, UBI is a Utah retail insurance broker with its principal place of business in Utah.

## JURISDICTION AND VENUE

9. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1). There is complete diversity of citizenship between Scottsdale and Defendants, and the amount in controversy exceeds $75,000 exclusive of interest and costs.

10. Venue is proper in this district pursuant to 28 U.S.C. §1391(b)(2) and (3) because a substantial part of the events giving rise to the claims occurred in this District and Defendants are subject to the Court's personal jurisdiction.

## FACTUAL ALLEGATIONS

### The Policy

11. Scottsdale issued claims-made-and-reported Business and Management Indemnity Policy number EKI3144655 (the "Policy") to DMS effective for the period from December 12, 2014 to December 12, 2015 (the "Policy Period"). A copy of the Policy is attached hereto as "Exhibit 1."

12. The Declarations Page of the Policy states:

**THE EMPLOYMENT PRACTICES, DIRECTORS AND OFFICERS AND COMPANY, AND FIDUCIARY COVERAGE SECTIONS OF THIS POLICY, WHICHEVER ARE APPLICABLE, COVER ONLY CLAIMS FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD OR, IF ELECTED, THE EXTENDED PERIOD AND REPORTED TO THE INSURER PURSUANT TO THE TERMS OF THE RELEVANT COVERAGE SECTION. . . . PLEASE READ THIS POLICY CAREFULLY.**

(Ex. 1 at Declarations) (emphasis in original.)

13. Subject to the Policy's terms, conditions, limitations, exclusions, and endorsements, the Policy provides coverage under an Employment Practices Coverage Section and a Directors and Officers and Company Coverage Section (the "D&O Coverage Section"). (Ex. 1 at Declarations.)

14. Insuring Clause A(1) of the D&O Coverage Section states that Scottsdale shall pay the "Loss" of the "Directors and Officers" for which the "Directors and Officers" are not indemnified by the "Company" and which the "Directors and Officers" have become legally

3

obligated to pay by reason of a "Claim" first made against the "Directors and Officers" during the Policy Period or, if elected, the Extended Period, and reported to Scottsdale pursuant to Section E.1. herein, for any "Wrongful Act" taking place prior to the end of the Policy Period. (Ex. 1 at D&O Coverage Section § A(1).)

15. Insuring Clause A(2) of the D&O Coverage Section states that Scottsdale shall pay the "Loss" of the "Company" for which the "Company" has indemnified the "Directors and Officers" and which the "Directors and Officers" have become legally obligated to pay by reason of a "Claim" first made against the "Directors and Officers" during the Policy Period or, if elected, the Extended Period, and reported to Scottsdale pursuant to Section E.1. herein, for any "Wrongful Act" taking place prior to the end of the Policy Period. (Ex. 1 at D&O Coverage Section § A(2).)

16. Insuring Clause A(3) of the D&O Coverage Section states that Scottsdale shall pay the "Loss" of the "Company" which the "Company" becomes legally obligated to pay by reason of a "Claim" first made against the "Company" during the Policy Period or, if applicable, the Extended Period, and reported to Scottsdale pursuant to Section E.1. herein, for any "Wrongful Act" taking place prior to the end of the Policy Period. (Ex. 1 at D&O Coverage Section § A(3).)

17. "Company" is defined in the General Terms and Conditions of the Policy as the "Parent Company" (i.e., DMS and Professional Consulting Services, LLC) and any "Subsidiary." (Ex. 1 at General Terms & Conditions § B(2) and Declarations at Item 1, as amended by Endorsement No. 1.)

18. "Subsidiary" is defined in the General Terms and Conditions as:

a. any entity of which more than fifty percent (50%) of the outstanding securities representing the present right to vote for the election of such entity's directors or managers are owned by the Parent Company, directly or indirectly, if such entity:

4

      i. was so owned on or prior to the inception date of this Policy; or

      ii. becomes so owned after the inception date of this Policy; and

  b. any joint venture entity in which the Parent Company, or any entity described in a. above, has an exact fifty (50%) ownership of the interests of such joint venture entity and where, pursuant to a written joint venture agreement, the Parent Company or entity described in a. above solely controls the management and operations of such joint venture entity.

(Ex. 1 at General Terms & Conditions § B(11).)

19. "Directors and Officers" is defined in the D&O Coverage Section of the Policy to mean, in pertinent part, a duly elected or appointed director, officer, or similar executive of the Company, or any member of the management board of the Company, and a person who was, is or shall become a full-time or part-time employee of the Company. (Ex. 1 at D&O Coverage Section § B(4)(a) and (b), as amended by Endorsements No. 21, 27, and 36.)

20. "Insured" is defined in the D&O Coverage Section as the Company and the Directors and Officers. (Ex. 1 at D&O Coverage Section § B(5).)

21. "Loss" is defined in the D&O Coverage Section, in relevant part, as:

damages, judgments, settlements, pre-judgment or post-judgment interest awarded by a court, and "Costs, Charges and Expenses" incurred by Directors and Officers under Insuring Clauses 1. Or 2. Or the Company under Insuring Clause 3. Loss does not include:

. . .

g. any amounts owed or paid to one or more securities holders of the Company under any written or express contract or agreement.

(Ex. 1 at D&O Coverage Section § B(7).)

22. "Claim" is defined in the D&O Coverage Section to mean, in pertinent part: "a civil proceeding against any Insured seeking monetary damages or non-monetary or injunctive relief,

5

commenced by the service of a complaint or similar pleading . . . ." (Ex. 1 at D&O Coverage Section § B(1)(c), as amended by Endorsements No. 25, 29, and 38.)

23. "Wrongful Act" is defined in the D&O Coverage Section to mean:

any actual or alleged error, omission, misleading statement, misstatement, neglect, breach of duty or act allegedly committed or attempted by:

a. any of the Directors and Officers, while acting in their capacity as such, or any matter claimed against any Director and Officer solely by reason of his or her serving in such capacity;

b. any of the Directors and Officers, while acting in their capacity as a director, officer, trustee, governor, executive director or similar position of any "Outside Entity" where such service is with the knowledge and consent of the Company; and

c. the Company, but only with respect to Insuring Clause 3. Of this Coverage Section.

(Ex. 1 at D&O Coverage Section § B(9).)

24. Section E(1) of the D&O Coverage Section states that the Insureds shall, as a condition precedent to their rights to payment under the D&O Coverage Section, give to Scottsdale written notice of any Claim made against the Insureds as soon as practicable, but in no event later than sixty (60) days after such Claim is first made against the Insureds, or the expiration of the Policy Period, whichever is later. A Claim shall be deemed to have been first made against the Insureds on the date an Insured who is an executive officer, director or general counsel becomes aware of such Claim. (Ex. 1 at D&O Coverage Section § E(1), as amended by Endorsement No. 10.)

25. Section E(3) of the D&O Coverage Section states: "Notice to [Scottsdale] shall be given to the address specified in Item 8. of the Declarations for this Policy," and the address specified in Item 8 is, in relevant part:

6

> <u>Notice of Claims to:</u>
> Scottsdale Indemnity Company
> Attention: Claims Manager
> 7 World Trade Center, 37th Floor
> 250 Greenwich Street
> New York, NY  10007
> FSReportALoss@freedomspecialtyins.com

(together with Section E(1) of the D&O Coverage Section of the Policy, the "Notice Provisions"). (Ex. 1 at D&O Coverage Section § E(3) and Declarations at Item 8.)

26. Section F(1) of the D&O Coverage Section states, in pertinent part, that "[i]t shall be the duty of the Insurer and not the duty of the Insureds to defend any Claim." (Ex. 1 at D&O Coverage Section § F(1).)

## The Underlying Action

27. In or around 2015, KMB, LLC and the Becks filed a lawsuit against Joe Kraus ("J. Kraus"), FLJ LLC ("FLJ"), and National Striping dba National Striping Company dba National Striping, Inc. ("National Striping"), Civil No. 120901549, in the Third Judicial District Court of Salt Lake County, Utah (the "Underlying Action").

28. On or about November 17, 2015, J. Kraus, FLJ, and National Striping (collectively, the "Underlying Claimants") filed a Third-Party Complaint against DMS and a Counterclaim against DSS, KMB, and the Becks in the Underlying Action. A copy of the Counterclaim and Third-Party Complaint filed in the Underlying Action (the "Claim") is attached hereto as "Exhibit 2."

29. In the Claim, the Underlying Claimants alleged that J. Kraus entered into a business agreement with the Becks (the "Agreement") pursuant to which National Striping was to transfer

7

its business to DSS, which would be owned by the Becks and in which J. Kraus would have a twenty percent ownership interest. (Ex. 2 ¶¶ 12-15.)

30. According to the Underlying Claimants, under the Agreement, J. Kraus was to receive a profit advance of $70,000 per year for two years, FLJ was supposed to transfer its striping equipment to KMB in exchange for a payment of $100,000, and KMB was to lease the equipment to DSS. (Ex. 2 ¶¶ 16-18.)

31. The Claim alleged that, after FLJ provided the equipment to KMB, DSS stopped making payments on the $70,000 profit advances, J. Kraus was not provided a twenty percent ownership interest in DSS, and KMB did not pay for the equipment. (Ex. 2 ¶¶ 21-23.)

32. The Underlying Claimants alleged that DSS improperly bid on and performed work in California under National Striping's California contractor's license without J. Kraus' knowledge or permission. (Ex. 2 ¶¶ 25-30.)

33. In the Claim, the Underlying Claimants asserted the following causes of action against DSS, KMB, and the Becks: (1) breach of contract; (2) unjust enrichment; (3) conversion; and (4) fraud. (Ex. 2 ¶¶ 15-24, 31-43.) The Underlying Claimants asserted a cause of action for promissory estoppel against the Becks, and a cause of action for "alter ego" against DMS. (Ex. 2 ¶¶ 25-30, 44-52.)

34. The Underlying Claimants sought damages in the amount of the value of the twenty percent ownership in DSS and/or the fair market value of the equipment in an amount no less than $500,000, plus interest and attorneys' fees. (Ex. 2 at 22-25.)

35. On or about January 19, 2021, the court in the Underlying Action entered a Second Amended Judgment that found: (1) in favor of FLJ on its claim against KMB for breach of the

8

Agreement in the amount of $4,003.22 plus interest; (2) in favor of J. Kraus on his claim against DSS for breach of the Agreement in the amount of $108,833.31 plus interest; (3) in favor of J. Kraus on his claim for reimbursement of operating expenses against DSS in the amount of $36,617.85 plus interest; (4) in favor of J. Kraus on his claim against the Becks for breach of fiduciary duty to be held jointly and severally liable with KMB and DSS for the foregoing amounts (5) in favor of J. Kraus on his claim for breach of fiduciary duty against the Becks in the amount of $303,496.78 plus interest; and (6) Underlying Claimants were entitled to recover attorneys' fees in the amount of $292,566.40. A copy of the Second Amended Judgment is attached hereto as "Exhibit 3."

## SCOTTSDALE'S COVERAGE POSITION

36. Over six years after the Claim was first made, on January 6, 2022, Defendants provided Scottsdale with notice of the Claim for the first time and requested coverage for the Claim and the Second Amended Judgment under any and all insurance policies issued by Scottsdale to Defendants (the "Notice Letter"). A copy of the Notice Letter is attached hereto as "Exhibit 4."

37. In the Notice Letter, Defendants' counsel stated that, soon after learning of the Claim, Defendants contacted UBI to provide notice of the Claim to all of Defendants' insurers, including Scottsdale. (Ex. 4 at 1.)

38. Scottsdale was not provided notice of the Claim prior to January 6, 2022.

39. On January 25, 2022, Scottsdale's counsel sent a letter to Defendants' counsel indicating that there is no coverage for the Claim as a threshold matter because the Claim was not timely reported to Scottsdale in accordance with the Policy's Notice Provisions, and reserving all of its rights and defenses under the Policy and available at law, including the right to assert

additional Policy terms, conditions, and defenses. A copy of Scottsdale's January 25, 2022 letter is attached hereto as "Exhibit 5."

40. On November 2, 2022, Scottsdale's counsel sent an e-mail to Defendants' counsel reaffirming that there is no coverage for the Claim because the Claim was not timely reported to Scottsdale, and reserving Scottsdale's rights with respect to whether the Claim was asserted against the Becks in their insured capacity, reserving Scottsdale's rights with respect to whether all or a portion of the Second Amended Judgment constitutes Loss under the Policy, and generally reserving its rights. A copy of Scottsdale's November 2, 2022 e-mail is attached hereto as "Exhibit 6."

## COUNT I – DECLARATORY JUDGMENT AS TO LATE NOTICE

**(Against DMS, DSS, KMB, K. Beck, and P. Beck)**

41. Scottsdale hereby adopts by reference the allegations contained in paragraphs 1 through 40 of this Complaint as if fully set forth herein.

42. An actual, present, and justiciable controversy exists concerning whether the Claim was timely reported to Scottsdale in accordance with the Policy's Notice Provisions.

43. Scottsdale requests that the Court declare that the Claim was not timely reported to Scottsdale and that Scottsdale has suffered prejudice as a result of the late notice and, as such, Scottsdale is not obligated to defend or indemnify DMS, DSS, KMB, K. Beck, or P. Beck under the Policy in connection with the Claim.

## COUNT II – DECLARATORY JUDGMENT AS TO NON-INSUREDS

### (Against DSS and KMB)

44. Scottsdale hereby adopts by reference the allegations contained in paragraphs 1 through 43 of this Complaint as if fully set forth herein.

45. An actual, present, and justiciable controversy exists concerning whether DSS and KMB are Insureds under the Policy.

46. Scottsdale requests that the Court declare that DSS and KMB are not Insureds under the Policy and, as such, Scottsdale is not obligated to defend or indemnify DSS or KMB under the Policy in connection with the Claim.

## COUNT III – DECLARATORY JUDGMENT AS TO UNINSURED CAPACITY

### (Against K. Beck and P. Beck)

47. Scottsdale hereby adopts by reference the allegations contained in paragraphs 1 through 46 of this Complaint as if fully set forth herein.

48. An actual, present, and justiciable controversy exists concerning whether K. Beck and P. Beck allegedly committed a Wrongful Act in their capacity as a Director and Officer of DMS and/or committed a Wrongful Act solely by reason of his or her serving as a Director and Officer of DMS.

49. Scottsdale requests that the Court declare that the Policy affords no coverage to K. Beck and P. Beck for the Claim because K. Beck and P. Beck were not alleged to and were not found to have committed a Wrongful Act in their capacity as a Director and Officer of DMS and/or because K. Beck and P. Beck were not alleged to and were not found to have committed a Wrongful Act solely by reason of his or her serving as a Director and Officer of DMS and, as such,

11

Scottsdale is not obligated to defend or indemnify K. Beck or P. Beck in connection with the Claim.

## COUNT IV – DECLARATORY JUDGMENT AS TO NO LOSS

### (Against DMS, DSS, KMB, K. Beck, and P. Beck)

50. Scottsdale hereby adopts by reference the allegations contained in paragraphs 1 through 49 of this Complaint as if fully set forth herein.

51. An actual, present, and justiciable controversy exists concerning whether the Second Amended Judgment, in whole or in part, constitutes Loss under the Policy.

52. Scottsdale requests that the Court declare that all or a portion of the amounts set forth in the Second Amended Judgment do not constitute Loss under the Policy and, as such, Scottsdale is not obligated to indemnify DMS, DSS, KMB, or the Becks for all or a portion of the Second Amended Judgment.

## COUNT V – BREACH OF FIDUCIARY DUTIES

### (Against UBI)

53. Scottsdale hereby adopts by reference the allegations contained in paragraphs 1 through 50 of this Complaint as if fully set forth herein.

54. Count V is pled in the alternative.

55. In the event that it is determined that UBI is the agent of Scottsdale, UBI owed fiduciary duties to Scottsdale, including but not limited to the duties to act with care and diligence.

56. Upon information and belief, UBI breached any fiduciary duties owed to Scottsdale when it failed to notify Scottsdale of the Claim at the time the Defendants notified UBI of the Claim in or around 2015.

57. As a direct and proximate result of UBI's breach of fiduciary duties, Scottsdale has suffered or will suffer harm and damages.

## PRAYER FOR RELIEF

WHEREFORE, Scottsdale prays that this Court enter an Order:

1. declaring that the Claim was not timely reported to Scottsdale and that Scottsdale has suffered prejudice as a result of the late notice and, as such, Scottsdale is not obligated to defend or indemnify DMS, DSS, KMB, K. Beck, or P. Beck under the Policy in connection with the Claim;

2. declaring that DSS and KMB are not Insureds under the Policy and, as such, Scottsdale is not obligated to defend or indemnify DSS or KMB under the Policy in connection with the Claim;

3. declaring that the Policy affords no coverage to K. Beck and P. Beck for the Claim because K. Beck and P. Beck were not alleged to and were not found to have committed a Wrongful Act in their capacity as a Director and Officer of DMS and/or because K. Beck and P. Beck were not alleged to and were not found to have committed a Wrongful Act solely by reason of his or her serving as a Director and Officer of DMS and, as such, Scottsdale is not obligated to defend or indemnify K. Beck or P. Beck in connection with the Claim;

4. declaring that all or a portion of the amounts set forth in the Second Amended Judgment do not constitute Loss under the Policy and, as such, Scottsdale is not obligated to indemnify DMS, DSS, KMB, or the Becks for all or a portion of the Second Amended Judgment;

5. alternatively, if it is determined that UBI was the agent of Scottsdale and Scottsdale is obligated to defend and/or indemnify any of Defendants in connection with the Claim, awarding

Scottsdale compensatory damages in the amount for which Scottsdale is found liable to any of Defendants as a direct or proximate result of UBI's breach of fiduciary duties to Scottsdale;

6. awarding Scottsdale its costs, expenses, and attorneys' fees; and

7. awarding Scottsdale all other relief that the Court deems just and equitable.

## JURY DEMAND

Plaintiff Scottsdale Indemnity Company demands a jury for all claims that can be so tried.

DATED this 13th day of February, 2023.

                                     SNOW CHRISTENSEN & MARTINEAU

                                     /s/ Korey D. Rasmussen
                                     Korey D. Rasmussen
                                     *Attorneys for Plaintiff*